## LOAN AGREEMENT

This Loan Agreement ("Agreement") is entered into as of the 21st day of July, 2020 the ("Effective Date") by and between Gate Corporation Limited, a Hong Kong limited corporation, Ste A/B, 7F, Eton Bldg, 288 Des Veaux Rd, Central Hong Kong ("Gate") and its U.S. based affiliates EF Global Corporation, a Delaware corporation, EFG America, LLC, a Delaware limited liability company and Tex-Gas Holdings, LLC, a Delaware limited liability company ("Tex-Gas") (all together referred to as "Borrower") and FORTUNE INSIGHT LIMITED , a BVI business company organized and existing under the laws of the British Virgin Islands with number 1873825 and registered business address at Sea Meadow House, Blackburne Highway, (P.O. Box 116), Road Town, Tortola , British Virgin Islands (hereinafter called "Creditor"), at its address of 19th Floor CMA Building, 64 Connaught Road Central Hong Kong Office ("Creditor").

**WHEREAS,** Borrower desires to obtain funding from Creditor to be utilized for repayment of certain secured loans and for working capital of Borrower's business;

**WHEREAS,** Creditor is willing to loan certain funds to Borrower under a revolving line of credit subject to, and in accordance with the terms hereof;

**WHEREAS,** Creditor wishes to assign its rights in the security provided by Borrower to certain of its creditors and Borrower consents to such assignment.

**NOW THEREFORE,** Borrower, Creditor, in consideration of the mutual covenants and conditions herein contained, and intending to be legally bound, do hereby agree as follows:

1. **Loan to Borrower** Subject to the terms and conditions of this Agreement, Creditor agrees to loan to Borrower the sum of up to Thirty Million U.S. Dollars due and payable in total five years from the date hereof ("Due Date") plus payment of all interest which shall accrue and be payable on or before the Due Date at a rate of ten percent (10%) per annum (the "Loan"). Draw down on the Loan shall be as requested by Borrower and approved by Creditor and shall be in accordance with the business plans of Borrower as may change from time to time. Mutually agreed to proceeds of the Loan shall be made available to Borrower at Closing in immediately available funds, and shall be wire transferred to the account(s) mutually designated by Borrower and Creditor, subject to receipt of a first security interest in all of each of Borrower's assets and a first deed of trust on the plant and equipment of the Tex-Gas Holdings, LLC plant located in Bay City, Texas (all security interests referred to herein as the "Security") which such Security shall be assigned by Creditor to certain of its creditors as provided herein.

2. **Purpose of Loan.** The proceeds of the Loan shall be used for business purposes and not for consumer.

3. **Promissory Note.** The Loan shall be documented and evidenced through the execution by Borrower in favor of Creditor of a Promissory Note substantially in the form of that attached hereto as <u>Exhibit A</u> ("Note").

4. **Security Agreement.** The Loan and the corresponding obligations of Borrower under the applicable Note, shall be secured by a Security Agreement substantially in the form of Exhibit B attached hereto as to certain assets of Borrower set forth therein as collateral (the "Security Agreement"), such Security Agreement to be executed and delivered by Borrower at Closing of the Loan. Borrower hereby consents to the assignment of the Security Agreement to Creditor's designee.

5. **Deed of Trust.** The Loan and the corresponding obligations of Borrower under the applicable Note, shall, additionally, be secured by a Deed of Trust to the real property comprising the Bay City, Texas Plant substantially in the form of Exhibit C attached hereto, such Deed of Trust to be executed and delivered by Borrower at Closing of the Loan. Borrower hereby consents to the assignment of the Deed of Trust to Creditor's designee.

6. **Closing Deliverables.**

   a. At Closing of the Loan, the relevant parties shall deliver the following:

      i. Executed versions of the Note, Security Agreement and Deed of Trust;

      ii. Any agreed upon draw on the Loan;

      iii. Verified first Deed of Trust to be held by Creditor or its assignee upon Closing as verified by electronic record in Bay City, Texas.

      iv. UCC search indicating that upon payment of any liens outstanding to Tex-Gas Holdings, LLC Creditor or its assignee shall hold as collateral a first security interest on the real and personal property of Tex-Gas Holdings, LLC. Additionally, a UCC-1 financing statement to be filed upon closing of the Loan in favor of Creditor or its assignee on all assets of Tex-Gas Holdings, LLC and on all other Borrower.

7. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default:"

   a. Borrower shall fail to pay when due any principal or interest on any Note or on any other obligation of Borrower to Creditor;

   b. Borrower shall fail to perform or comply with any obligation required to be performed or complied with by it under this Agreement, any Note, or the Security Agreement or Deed of Trust which failure continues uncured for a period of thirty (30) calendar days following notice by Creditor;

c.  Any representation, warranty, request or certificate made or furnished by Borrower to Creditor proves to have been untrue or misleading in any material respect when made; or

d.  Borrower (a) files a petition in bankruptcy under the Bankruptcy Code, as it now exists or may hereafter be amended, (the "Code") or an admission seeking the relief therein provided; (b) any bankruptcy or insolvency proceeding is commenced against Borrower and remains undismissed for a period of thirty (30) days; (c) is unable or admits in writing its inability to pay its debts as they become due; (d) makes an assignment for the benefit of creditor; (e) consents to the appointment of a receiver for all or a substantial part of its property; (f) fails to have vacated or set aside within thirty (30) days of its entry an order of a court appointing without its consent a receiver or trustee for all or a substantial part of its property; (g) has an order for relief entered against it under the Code and not discharged within thirty (30) days; or (h) winds up its affairs, suspends its current business or dissolves or terminates its existence.

**8.     Rights on Default.** Upon the occurrence of an Event of Default, the outstanding principal balance of the Loan and all accrued interest thereon, and all other obligations of Borrower to Creditor, whether matured or unmatured, (collectively, the "Obligations") shall be due and payable in full, and, if not promptly paid by Borrower upon demand, Creditor may, during continuance of such Event of Default, exercise the rights and remedies available to it under the terms of the applicable Note(s), the Security Agreement and/or the Deed of Trust.

**9.     Miscellaneous.**

a.  Neither a failure nor any delay on the part of Creditor to exercise any right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or privilege preclude any other or further exercise thereof or the exercise of any other right or privilege.

b.  This Agreement shall be binding upon Borrower, their successors and assigns, and shall be binding upon and shall inure to the benefit of Creditor and their respective successors and assigns.

c.  Borrower will reimburse Creditor for all costs, expenses and reasonable attorney's fees, to the extent permitted by applicable law, expended or incurred by Creditor in (i) enforcing this Agreement, (ii) collecting any sums which become due Creditor hereunder or on the applicable Note(s), or (iii) realizing on any collateral.

d.  Borrower acknowledges and agrees that (a) this Agreement constitutes a "contract of indebtedness," and (b) each Note has been issued for a business purpose, and not for a purpose that is primarily personal, family, or household.

e.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Texas.

f.  All notices, requests, demands or other communications required by this Agreement, the applicable Note(s), the Security Agreement, or the Deed of Trust shall (unless expressly stated to the contrary in such document) be addressed as follows:

**BORROWER**:
Gate Corporation Limited
Ste A/B, 7F, Eton Bldg, 288 Des Veaux Rd,
Central Hong Kong

**CREDITOR**:
FORTUNE INSIGHT LIMITED , a BVI business company organized and existing under the laws of the British Virgin Islands with number 1873825 and registered business address at Sea Meadow House, Blackburne Highway, (P.O. Box 116), Road Town, Tortola, British Virgin Islands its address of 19th Floor CMA Building, 64 Connaught Road Central Hong Kong Office, or at such other address as a party may from time to time designate in writing.

g.  This Agreement may be executed in several counterparts, and all counterparts so executed shall constitute one agreement, binding on all parties hereto, notwithstanding that all the parties are not signatories to the same counterpart.

h.  In case any one or more of the provisions contained in this Agreement, the applicable Note(s), the Security Agreement, and/or the Deed of Trust shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, the invalidity, illegality or unenforceability of such provisions shall not affect any other provisions of such document(s), and the same shall be construed as though the invalid, illegal, or unenforceable provision had never been contained therein.

i.  The parties acknowledge that, as to any and all disputes that may arise between them with respect to this Agreement, the commercial nature of the transaction out of which this Agreement arises would make any such dispute unsuitable for trial by jury.   ACCORDINGLY, THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY AS TO ANY AND ALL DISPUTES THAT MAY ARISE RELATING TO THIS AGREEMENT, THE NOTE, THE SECURITY AGREEMENT, THE DEED OF TRUST, OR TO ANY OF THE OTHER INSTRUMENTS EXECUTED IN CONNECTION HEREWITH.

j.  Creditor hereby assigns all of its rights, benefits and interests in the Security Agreement and Deed of Trust to the assignees as follows and upon default hereunder or under the Security Agreement or Deed of Trust Assignees shall have the right to exercise all rights and interests of Creditor under the Security

Agreement and Deed of Trust. Creditor shall be responsible for providing all notices to Assignees.

    **Assignees:**    Lui So Yuk
House 3, Marinella
9 Welfare Road
Island South, Hong Kong

Sham Wai Bun
A2, 339 Tai Hang Road
Happy Valley, Hong Kong

**Signature Page to follow:**

THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**CREDITOR:**
Fortune Insight Limited

By: _____
       Paul Heffner. President

**BORROWER:**
Gate Corporation Limited

By: _____*[signed]*_____
       D. Elroy Fimrite, President

EF Global Corporation

By: _____*[signed]*_____
       D. Elroy Fimrite, President

EFG America, LLC

By: _____*[signed]*_____
       D. Elroy Fimrite, President

Tex-Gas Holdings, LLC

By: _____*[signed]*_____
       D. Elroy Fimrite, President

**EXHIBIT A**
**FORM OF LINE OF CREDIT**
**PROMISSORY NOTE**

**EXHIBIT B**
**FORM OF SECURITY AGREEMENT**

**EXHIBIT C**
**FORM OF DEED OF TRUST**

## SECURITY AGREEMENT

This Security Agreement (the "**Security Agreement**"), dated as of the 21st day of July, 2020, is by and between **Tex-Gas Holdings, LLC** ("**Debtor**") and the secured party identified in the signature block below (the "**Secured Party**"), who are the designees, assignees of the lender ("Lender") to Debtor and/or its affiliates pursuant to that certain Loan Agreement dated July 21, 2020 by and between Debtor and/or its affiliates and Secured Party (the "**Loan Agreement**") for such sums advanced in connection with the Loan under such Loan Agreement, documented by an applicable Promissory Note made by Debtor ("**Note**").

1. **CREATION OF SECURITY INTEREST.** Debtor hereby grants to the Secured Party a security interest in the Collateral described in Section 2 of this Security Agreement to secure performance and payment of all obligations and indebtedness of Debtor to the Lender and Secured Party under the Loan Agreement and the applicable Note, as further described in this Security Agreement (collectively, the "Obligations").

2. **COLLATERAL.** In order to secure the payment when due of any and all Obligations, Debtor hereby pledges to the Secured Party and grants to the Secured Party a security interest in, and all of the Debtor's right, title and interest in and to, the following collateral (collectively, the "Collateral"):

> **All assets of Debtor, including, but not limited to, any and all equipment, fixtures, inventory, accounts, chattel paper, documents, instruments, investment property, general intangibles, letter-of-credit rights, and deposit accounts now owned and/or hereafter acquired by Debtor, together with any products and proceeds thereof.**

Collateral shall be deemed to be expansive and not limiting within this description, and shall be deemed a wraparound security interest, including if such security interest held by Secured Party may not be the first security interest.

3. **PAYMENT OBLIGATIONS OF THE DEBTOR.** Debtor shall pay to the Secured Party any sum or sums due or which may become due pursuant to the Loan Agreement and applicable Note(s). Debtor shall pay to the Secured Party on demand all expenses and expenditures, including reasonable attorney's fees and other legal expenses incurred or paid by the Secured Party in exercising or protecting its interests, rights and remedies under this Security Agreement.

4. **DELIVERY OF THE COLLATERAL.** Upon the request of the Secured Party, any certificates evidencing or representing a portion of the Collateral shall be delivered to the Secured Party upon the execution and delivery of this Agreement. All other certificates and instruments constituting, evidencing or representing a portion or all of the Collateral from time to time shall be delivered to the Secured Party promptly upon the request thereof by the Secured Party. All such certificates and instruments shall be held by or on behalf of the Secured Party pursuant hereto, and shall be delivered to the Secured Party in suitable form for transfer by delivery or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to the Secured Party.

5.  **DEBTOR'S COVENANTS.** Debtor shall not sell, transfer, assign or otherwise dispose of the Collateral or any interest therein except as contemplated herein, unless authorized in writing by the Secured Party, and Debtor shall keep the Collateral, free from unpaid charges, including taxes, and from liens, encumbrances and security interests unless authorized in writing by Secured Party. Debtor represents to Secured Party that the Collateral is free and clear of all legal and equitable encumbrances other than as contemplated in this Agreement. Debtor shall provide cooperation to the Secured Party in filing any Financing Statement or other document necessary to protect the security interest under this Security Agreement against the rights or interests of third persons.

6.  **EVENTS OF DEFAULT.** Debtor shall be in default under this Security Agreement upon the happening of any (i) event of default under the Loan Agreement or an applicable Note, or (ii) the failure of any warranty, representation, covenant, or undertaking of Debtor contained in this Security Agreement (herein called an "**Event of Default**"):

7.  **SECURED PARTY'S RIGHTS AND REMEDIES.**

    a.  **Rights Exclusive of Default**

        i.  This Security Agreement, the Secured Party's rights hereunder or the Obligations hereby secured may be assigned by Secured Party in connection with any assignment of the applicable Note(s), and in any such case the assignee shall be entitled to all of the rights, privileges and remedies granted in this Security Agreement to the Secured Party.

        ii. The Secured Party shall have the right to continue to make payments to maintain or protect the value of the Collateral in the discretion of Secured Party to the extent not promptly and sufficiently addressed by Debtor upon gaining knowledge of the same. As to any payment made to maintain or protect the value of the Collateral or the rights provided under this Security Agreement, Secured Party may make such payments in its discretion and any amount so paid shall be a part of the principal under the applicable Note(s) as if extended pursuant to such Note(s).

        iii. At its option, the Secured Party may discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral upon notice to Debtor and to the extent not promptly and sufficiently addressed by Debtor upon gaining knowledge of the same. Debtor agrees to reimburse the Secured Party on demand for any payment made, or expense incurred by the Secured Party pursuant to the foregoing authorization.

    b. **Rights in Event of Default**

        i. Upon the occurrence of an Event of Default, and at any time thereafter, the Secured Party may declare all Obligations immediately due and payable and shall have the rights and remedies of a Secured Party under the applicable Uniform Commercial Code, including without limitation thereto, the right to sell or otherwise dispose of any or all of the Collateral and the right to take possession of the Collateral, and for that purpose the Secured Party may enter upon any premises on which the Collateral or any part thereof may be situated and remove the same therefrom, so long as the same may be accomplished without a breach of the peace. The Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to both parties. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Secured Party will send the Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other disposition thereof is to be made. Expenses of retaking, holding, preparing for sale, selling or the like shall include the Secured Party's reasonable attorney's fees and legal expenses, and the Debtor agrees to pay such expenses.

        ii. The Secured Party may remedy any Event of Default and/or may elect to waive any Event of Default without waiving any other prior or subsequent Event of Default.

        iii. The remedies of the Secured Party under this Security Agreement are cumulative, and the exercise of any one or more of the remedies provided for herein shall not be construed as a waiver of any of the other remedies of the Secured Party; however the remedies of this Security Agreement (together with the Loan Agreement and/or any other agreement with Debtor and/or its affiliate in relation to applicable Note(s)) shall constitute the Secured Party's sole and exclusive remedies as to the Obligations.

8. **MISCELLANEOUS.**

    a. The pronouns used in this instrument shall be construed as masculine, feminine, or neuter as occasion may require. "**Secured Party**" and "**Debtor**," as used in this instrument, include the heirs, executors or administrators, successors, representatives, receivers, trustees and assigns of those parties.

    b. The section headings appearing in this instrument have been inserted for convenience only and shall be given no substantive meaning or significance whatever in construing the terms and provisions of this instrument. Terms used in this instrument which are defined in the applicable Uniform Commercial Code are used with the meanings as therein defined.

    c. This Security Agreement shall be governed by, and construed in accordance

with, the laws of the State of Texas.

**THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**IN WITNESS WHEREOF**, this Security Agreement is executed to be effective as of the 21st day of July, 2020.

                                                Tex-Gas Holdings, LLC

                                                a Delaware limited liability company

                                                By: _____

                                                         D. Elroy Fimrite, President

**Secured Parties**:

Lui So Yuk
House 3, Marinella, 9 Welfare Road, Island South, Hong Kong
Secured for USD$18 million, plus interest and expenses


By:_____
      Paul Heffner, Authorized Representative


Sham Wai Bun
A2, 339 Tai Hang Road, Happy Valley, Hong Kong
Secured for USD $12,000,000, plus interest and expenses


By:_____
      Paul Heffner, Authorized Representative