IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXES
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 21-80092** |
| **TEX-GAS HOLDINGS, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| | § | |
| **TEX-GAS HOLDINGS, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 21-8002** |
| | § | |
| **LUI SO YUK** | § | |
| and | § | |
| **SHAM WAI BUN** | § | |
| and | § | |
| **JAY L. KRYSTINIK** | § | |
| and | § | |
| **FORTUNE INSIGHT LIMITED,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

### INTRODUCTION

Dead men tell no tales[1] and unfortunately, they also do not testify in adversary proceedings. Such is the case here where a potential primary witness, Paul Heffner ("Heffner"), is unavailable due to his suicide or murder on January 1, 2021, in Hong Kong. While typically one would not impugn the reputation of a dead person, here the Court has no such qualms. Heffner was by the evidence a liar, conman, forger,[2] and manipulator. He was also by strong inference a crook,

---

[1] A sequel to and critically panned Disney movie based on the movie/amusement park ride "Pirates of the Caribbean." However, here describing someone who has been killed cannot reveal secret information.
[2] ECF 97-7, 97-8, 97-9.

running a Ponzi scheme[3] that potentially led to his death.  Here the Court is asked to pick up parts of the remnants of his fraudulent actions and then determine who should bear the loss that was created by his false financing schemes.  This is the Court's best attempt to do so given the convoluted facts in this case.  Here, the unavailability of Heffner given his death, mandated that a key witness was unavailable, and therefore some of the facts remained open to reasonable speculation.  Ultimately, the Court determines that all parties hereto had a direct affiliation with Heffner and bear responsibility for what has occurred.

While the Court recognizes that arguments were made that Heffner had parties in this litigation that were co-conspirators, the evidence does not support such a holding.  If this were the case, the Court notes that the findings in this case would have been different.  While all the parties have a close affinity with Heffner, his actions, which at times were detrimental to the plaintiff and then conversely at times detrimental to the defendants, do not support such conclusions by the Court.  The connections between the various parties are best described as follows:

Heffner was introduced to various family members of the defendants between 2016 and 2017 as the boyfriend of the aunt of Sham Chi Hin Adrian a/k/a Adrian Sham (hereinafter "Adrian").  Adrian is the son of defendant Sham Wai Bun (hereinafter "Bun") and he is married to the daughter (Rachel) of the defendant, Lui So Yuk (hereinafter "Yuk").  Adrian was the "go between" of Heffner, Bun and Yuk.  Adrian speaks English fluently; and Heffner did not speak

---

[3] ECF 97-54, pg. 2 of 3 strongly suggests that Heffner was running a Ponzi scheme.  On May 3, 2019, the opening balance of the Business Vantage account of Net Effect Limited [controlled solely by Heffner] was $61,691.55 (HKD).  Thereafter, in two transactions dated May 15 and May 20, 2019, the Defendants were the source of deposits into the account totaling $37,599,985.00 (HKD).  Thereafter on May 22 and May 24, 2019, the Defendants received back from Net Effect Limited $10,660,000.00 (HKD) [Bun] and $15,405,000.00 (HKD) [Yuk].  The testimony was that these payments were for other transactions between Heffner, Bun and Yuk for which payment was due, however Heffner did not have these sums to return to Bun and Yuk until he received the May 15 and May 20 deposits of Bun and Yuk.  Heffner was in effect returning to Bun and Yuk their own money.  Hence the payment of Bun's and Yuk's return on their prior transactions were from money they later invested, which the Court considers to be a fraudulent Ponzi scheme.

Cantonese which is the primary language of Bun and Yuk.[4]  Adrian, Heffner, Bun and Yuk are, or were, residents of Hong Kong.

Over time Heffner became a part of Adrian's extended family due to his relationship with Adrian's aunt, trust developed, and Heffner encouraged the family to invest with him.  Heffner presented himself as controlling various entities, including Adamas Ping An Opportunity Fund via Adamas Asset Management.  Heffner was also connected via various business dealings to the plaintiff/debtor Tex-Gas Holdings, LLC. (hereinafter "Tex-Gas" or "Plaintiff") both as a director of its parent company (Gate Corporation Limited), and in prior business dealings in obtaining financing[5] to refinance real property and a chemical plant to be used in the recycling of vulcanized rubber.  Additionally, Heffner unsuccessfully attempted to obtain additional financing for the operation of the vulcanized rubber recycling facility.  Heffner sought various loans[6] from Bun and Yuk via proposals made to Adrian.  As part of these various loans, Bun and Yuk made advances of funds that they believed were for a project called Project Polymer (the vulcanized rubber recycling plant/land), they additionally believed that these loans were secured by this project; i.e., the real property and chemical plant of the Plaintiff.  These loans were to fund the future operations of Tex-Gas as a vulcanized rubber recycler.  This project was never funded, and the funds advanced by Bun and Yuk were only partially transferred to the parent corporation of Tex-Gas, Gate Corporation Limited ("Gate Corp.").  Gate Corp.'s directors included Heffner, and he used that position to guarantee a three-million-dollar loan on Tex-Gas's behalf.  The Court finds that all the parties to this adversary were closely affiliated with Heffner.  They also all appear to have been duped, at different times, by his various fraudulent actions.

---

[4] Bun speaks passible English, Yuk has only a rudimentary understanding of English.
[5] He also personally guaranteed this debt.
[6] The testimony was conflicting, but the record supports that between 6 and 10 "deals" or "loans" were made between Bun or Yuk with Heffner/Net Effect.

## JURISDICTION

Jurisdiction is conferred on this court by 28 U.S.C. § 157(a) and 1334(b). The parties have entered into a Joint Pretrial Stipulation (ECF No. 93), which the Court adopts. The parties agree that this is a core proceeding, and this Court has authority to render a final judgment in this proceeding.[7]

## PROCEDURAL BACKGROUND

This adversary proceeding No. 21-8002 was filed on June 1, 2021 (ECF No. 1) by plaintiff/debtor, Tex-Gas Holdings, LLC. An Amended Complaint was filed on June 29, 2021. An answer was filed on July 14, 2021, by defendants, Sham Wai Bun (also known as "Albert Sham" or "Bun") and Lui So Yuk (also known as "Ida" or "Yuk"). No answer was filed by defendant Fortune Insight Limited.[8] Thereafter, Plaintiff filed a Second Amended Complaint on November 5, 2021 (ECF No. 59), the live pleading, seeking a declaratory judgment resolving the dispute as to whether a lien existed regarding Yuk and Bun's efforts to foreclose on a deed of trust, and Fortune Insight's failure to abide by its financing obligations under the Promissory Note, Loan Agreement, and Deed of Trust. Yuk and Bun filed their answer and affirmative defenses on November 19, 2021 (ECF No. 62). On January 7, 2022, this Court entered a Default Judgment against Fortune Insight Limited for its failure to appear in this adversary proceeding. The remaining defendants are Bun and Yuk.

Plaintiff now seeks expungement and release of the lien, and disallowance of the proofs of claims filed by Yuk and Bun as set forth in its objections to their claims, which have been consolidated with this adversary proceeding. Plaintiff also requests a declaratory judgment regarding the lien asserted by Yuk and Bun, avoidance of any lien asserted by Yuk and Bun against

---

[7] Pretrial Stipulation, ECF No. 93
[8] Given the death of Paul Heffner, the only principle of Fortune Insight, default was not unexpected.

the real property and plant of the plaintiff, a judgment against Yuk and Bun for breach of contract, and an award of attorney's fees and costs against Yuk and Bun.

**FACTS**

As set forth above, the parties are acquainted through Paul Heffner. Paul Heffner, the president of Fortune Insight, and the founder of Adamas Asset Management ("Adamas"). Heffner also controlled Adamas Ping An Opportunities Fund ("Adamas Ping An"), as well as Net Effect Limited ("Net Effect'), and was a resident of Hong Kong. Heffner represented that Adamas was an investment management company which assisted clients in locating and providing structured private funding in Asia. Heffner was the sole party that controlled Adamas, Adamas Ping An, and Net Effect. As presented to this Court through the testimony of the witnesses, it has become clear that Paul Heffner was responsible for the failed financial transactions faced by all the parties involved. By all appearances to all parties to this litigation, Heffner was a successful investment manager. Representing himself to be a commercial investor, Heffner utilized funds from the defendants, who considered him someone they could trust, promised that the funds would be used for loans that were secured by collateral, and promised returns with high interest rates.

Beginning in 2017, Gate Corporation Limited, a Hong Kong based entity, along with its U.S. based affiliates, including plaintiff, Tex-Gas Holdings, LLC, sought financing from domestic and international investors to provide general financing for ongoing operations. Heffner introduced Gate Corp, to multiple entities for purposes of securing financing in an amount up to $500,000,000 (USD). As a condition to his assistance, Heffner became a member of the board of directors of Gate Corp. on March 28, 2018.[9] Net Effect thereafter obtained and transferred to Gate Corp. funds from Bun and Yuk as follows: $1,570,000 (HKD) on October 24, 2019, $2,355,000 (HKD) on

---

[9] ECF No. 101-14

November 4, 2019, $400,000 (HKD) on January 10, 2020, $400,000 (HKD) on January 20, 2020, $100,000 (HKD) on January 21, 2020, and $400,000 (HKD) on September 30, 2020.  A total of $688,300 as converted to USD per historical exchange rates on the dates of transfer.  Elroy Fimrite testified that a portion of these funds were allocated to the purchase of royalty units of EFG, with the remaining funds to be used at Gate Corp.'s discretion.  These funds were never repaid to Heffner, Net Effect, Bun or Yuk.

On May 06, 2020, East Breifne LLC made a loan to Gate Corp., EF Global, EFG America, LLC, and Tex-Gas LLC (the "East Brefine Loan"). The proceeds of this loan were used to retire a prior lien on the Plaintiff's real property, and to pay for operational expenses. This was secured by a deed on the property in Matagorda County, Texas, and filed and recorded in the real property records of Matagorda County, Texas.[10]  This loan was guaranteed by Paul Heffner.

During this same time, Yuk and Bun began investing with Heffner, with Adrian Chi Hin Sham, the son of Bun and son-in-law of Yuk, the main point of contact between Paul Heffner and Yuk and Bun. Bun asserts he began investing with Heffner in 2017. On May 15, 2019, Bun and Net Effect entered into a loan agreement wherein Bun would loan Net Effect $23,200,000 (HKD) (equivalent to approximately $2,978,532 (USD)). Heffner personally guaranteed the loan.[11] Net Effect's bank statements confirm a deposit of $2,799,985.00 (HKD) on May 15, 2019.[12] Bun had previously given $19,000,985.00 (HKD) to Net Effect on April 15, 2019.[13]

Yuk asserts she invested with Net Effect and Heffner beginning in 2018. On May 15, 2019, Yuk and Net Effect entered into a loan agreement wherein Yuk would loan Net Effect $34,800,000

---

[10] ECF No. 97-5
[11] ECF No. 101-6
[12] ECF No. 101-11, page 27
[13] ECF No. 101-11, page 25.

(HKD) (equivalent to approximately $4,468,312.34 USD).[14] Heffner personally guaranteed the loan. Net Effect's bank statements confirm a deposit of $34,800,000.00 (HKD).[15] Heffner represented to Defendants that he was raising money from various investors to fund "Project Polymer."

Throughout 2018, 2019, and continuing through the beginning of 2020, Yuk invested $86,149,970 (HKD). Bun invested $66,799,940 (HKD). Heffner sporadically issued payouts to both parties. Upon examination of Net Effect's bank records,[16] Yuk has been paid $96,198,700 (HKD), and Bun has been paid $56,753,640 (HKD).

Beginning in November 2019, Heffner/Net Effect made various loans to Gate Corp., totaling $5,225,000.00 (HKD) or $668,300.00 (USD).[17] There was no evidence that these funds were ever repaid, and the funds were expended. Therefore, given the facts and Tex-Gas's various claims that these debts should not be allowable in the main bankruptcy case appear disingenuous. Gate Corp. was the parent corporation of the debtor, Tex-Gas had no bank account, it could never have received any loaned funds, so these funds were directed to Gate Corp. The evidence showed that these loans were initially funded by the Yuk and Bun payments to Heffner or Net Effect. Additionally, Fimrite testified that the money that went to Gate Corp. was for royalty units. The appendices attached to the loan agreements from Yuk and Bun specially provide for the issuance of Royalty Units to the lender.[18] In part, the appendix provides "[f]irst priority over 100% shares of the Borrower and its subsidiaries including Tex-Gas Holdings, LLC."

---

[14] ECF No. 101-5
[15] ECF No. 101-9 and ECF No. 101-11, page 27
[16] ECF No. 101-11
[17] As described in the Court's accounting below.
[18] ECF Nos. 101-5, page 6 and 101-6, page 6

7 / 16

The evidence showed that Yuk and Bun became concerned about their investments, and both parties sought assurance from Heffner that there was collateral for their funds. In the summer of 2020, both parties, through Adrian, pressed Heffner for these assurances. In July 2020, in response to payment demands made by Yuk and Bun, Heffner provided a forged deed of trust, purportedly signed by Tex-Gas to Yuk and Bun, in an effort to satisfy their repayment concerns.[19] The Defendants, alongside Adrian, became immediately aware that this deed of trust was not filed in the real property records of Matagorda County, Texas.

In his negotiations with Gate Corp., Heffner represented that funding for a $30,000,000.00 (USD) revolving line of credit would become available to Gate Corp. from Fortune Insight on July 31, 2020. On July 21, 2020, Gate Corp., Tex-Gas, EFG America, LLC, and EF Global (together, the "Borrowers") entered into a Promissory Note for a Revolving Line of Credit Facility ("Note") and Loan Agreement with Fortune Insight[20] as the lender. A separate loan agreement was also executed by the Borrowers, but not Fortune Insight. A deed of trust was executed by the Plaintiff only on July 21, 2020 (the "Deed of Trust"). The Deed of Trust states that it secures payment of the Note with real property described as 17.16 acres of land and improvements located at 1950 FM 3057, Bay City, Matagorda County, Texas 77414 (the "Property"). Elroy Fimrite, as the authorized representative of all Borrowers, signed the Loan Documents and the Deed of Trust, which was filed and recorded in the real property records of Matagorda County, Texas at Doc No. 3870.

According to the Deed of Trust, Defendants Yuk and Bun were the beneficiaries and co-trustees, as well as the "legal and equitable holder of the debt secured by this Deed of Trust." The affidavit of D. Elroy Fimrite states that Yuk and Bun were part of a loan syndicate, and they were the parties responsible to fund the $30,000,000.00 (USD) to Fortune Insight, which monies would

---

[19] ECF No. 97-7
[20] Fortune Insight was also owned and controlled by Paul Heffner.

then be made available to fund the loan to Borrowers. The proposed financing process was to consist of Yuk funding $18,000,000.00 (USD) to Fortune Insight and Bun funding $12,000,000.00 (USD) to Fortune Insight, and Fortune Insight was to loan the entire $30,000,000.00 (USD) to the Borrowers on a revolving basis. The initial draw of $14,000,000.00 (USD) was expected to be available on July 31, 2020. This initial draw was never funded.

Neither Yuk nor Bun actually made these loans and testified that they did not know Fortune Insight and that they had no knowledge of the Note or loan. Their only concern was that they had a deed of trust which could be used to collateralize their prior investments with Heffner. On July 22, 2020, Yuk and Bun received a link to the filed Deed of Trust from Heffner via WhatsApp.

On January 1, 2021, Heffner, the central figure to these transactions, was found dead in Hong Kong. Immediately thereafter, on February 22, 2021, Yuk and Bun, through counsel, began demanding that Gate Corp. and Tex-Gas pay them $30,000,000.00 (USD) or they would foreclose under the Deed of Trust. On May 07, 2021, the Substitute Trustees retained by Yuk and Bun, sent out the Notice of Foreclosure, alleging that the Borrowers defaulted on the terms of the loan documents.

On June 01, 2021, the underlying bankruptcy case was filed for the purposes of stalling the foreclosure. Thereafter, Bun filed Proof of Claim No. 4 against Tex-Gas asserting a total amount owed of $3,793,193.37, comprised of principal, interest, and redemption repayment amounts due. Yuk filed Proof of Claim No. 3 against Tex-Gas asserting a total amount owed of $5,689,790.06, comprised of principal, interest, and redemption repayment amounts due.

The Court has via admitted evidence prepared the following accounting that traces the transfer of funds that occurred to Heffner/Net Effect from Bun and Yuk; from Heffner/Net Effect back to Bun and Yuk and from Heffner/Net Effect to Gate Corp.[21]

ACCOUNTING OF FUNDS ((HKD) UNLESS CONVERTED TO (USD))

| Date | From Bun to Heffner/Net Effect | Heffner/Net Effect To Bun | From Yuk to Heffner/Net Effect | Heffner/Net Effect To Yuk | Heffner/Net Effect To Gate Corp | Page No. (ECF No. 101-11) |
|---|---|---|---|---|---|---|
| Wednesday, September 19, 2018 | | $ 450,000.00 | | | | 10 |
| Tuesday, October 30, 2018 | $ 19,999,985.00 | | | | | 12 |
| Tuesday, November 20, 2018 | | $ 400,000.00 | | | | 14 |
| Friday, December 21, 2018 | | $ 700,000.00 | | | | 16 |
| Friday, December 28, 2018 | | | $ 24,349,985.00 | | | 16 |
| Monday, January 7, 2019 | | | | $ 27,540,000.00 | | 19 |
| Monday, February 25, 2019 | | $ 312,000.00 | | | | 73 |
| Friday, March 1, 2019 | | | $ 26,999,985.00 | | | 21 |
| Monday, March 4, 2019 | | $ 20,340,000.00 | | | | 23 |
| Wednesday, March 20, 2019 | | $ 785,000.00 | | | | 23 |
| Thursday, March 21, 2019 | | | | $ 785,000.00 | | 23 |
| Friday, March 22, 2019 | | $ 416,000.00 | | | | 23 |
| Wednesday, March 27, 2019 | | | | $ 405,000.00 | | 23 |
| Monday, April 15, 2019 | $ 19,999,985.00 | | | | | 25 |
| Wednesday, April 24, 2019 | | $ 10,816,000.00 | | | | 25 |
| Friday, April 26, 2019 | | | | $ 405,000.00 | | 25 |
| Monday, May 20, 2019 | $ 2,799,985.00 | | $ 34,800,000.00 | | | 27 |
| Wednesday, May 22, 2019 | | $ 10,660,000.00 | | | | 27 |
| Friday, May 24, 2019 | | | | $ 15,405,000.00 | | 27 |
| Thursday, June 27, 2019 | | | | $ 240,000.00 | | 30 |
| Friday, July 26, 2019 | | | | $ 12,240,000.00 | | 32 |
| Tuesday, August 20, 2019 | | | | $ 1,570,000.00 | | 34 |
| Thursday, September 5, 2019 | | $ 785,000.00 | | $ 785,000.00 | | 36 |
| Monday, September 23, 2019 | | $ 8,000,000.00 | | $ 450,000.00 | | 36 |
| Friday, September 27, 2019 | $ 7,999,985.00 | | | | | 36 |
| Monday, October 21, 2019 | | | | $ 30,450,000.00 | | 39 |
| Thursday, October 24, 2019 | | | | | $ 1,570,000.00 | ECF No. 101-25, pg. 3 |
| Monday, November 4, 2019 | | | | | $ 2,355,000.00 | ECF No. 101-25, pg. 3 |
| Saturday, November 23, 2019 | | $ 1,164,640.00 | | | | 101 |
| Tuesday, November 26, 2019 | | | | $ 1,748,700.00 | | 101 |
| Monday, December 2, 2019 | | | | $ 450,000.00 | | 102 |
| Wednesday, December 18, 2019 | | $ 375,000.00 | | | | 105 |
| Tuesday, December 31, 2019 | | | | $ 450,000.00 | | 105 |
| Friday, January 3, 2020 | $16,000,000.00 | | | | | 106 |
| Friday, January 10, 2020 | | | | | $ 400,000.00 | ECF No. 101-25, pg. 3 |
| Saturday, January 18, 2020 | | $375,000.00 | | | | 109 |
| Monday, January 20, 2020 | | | | | $ 400,000.00 | ECF No. 101-25, pg. 3 |
| Tuesday, January 21, 2020 | | | | | $ 100,000.00 | ECF No. 101-25, pg. 3 |
| Thursday, January 23, 2020 | | | | $ 250,000.00 | | 109 |
| Friday, January 24, 2020 | | | | $ 250,000.00 | | 110 |
| Friday, January 24, 2020 | | $400,000.00 | | | | 110 |
| Monday, July 20, 2020 | | | | $ 500,000.00 | | 130 |
| Monday, July 20, 2020 | | | | $ 1,000,000.00 | | 130 |
| Wednesday, July 22, 2020 | | | | $ 500,000.00 | | 130 |
| Wednesday, September 30, 2020 | | $ 775,000.00 | | $ 775,000.00 | | 139 |
| Wednesday, September 30, 2020 | | | | | $ 400,000.00 | ECF No. 101-13 |
| **Totals** | $ 66,799,940.00 | $ 56,753,640.00 | $ 86,149,970.00 | $ 96,198,700.00 | $ 5,225,000.00 | |
| US Dollar ((USD) Conversion) | | | | | $ 668,300.00 | |

---

[21] No funds were transferred to Heffner/Net Effect from Gate Corp.

Hong Kong Dollar (HDK) to US Dollar (USD) for 2019 and 2020
https://www.exchangerates.org.uk/HKD-USD-spot-exchange-rates-history-2019.html
https://www.exchangerates.org.uk/HKD-USD-spot-exchange-rates-history-2020.html

| Date | Rate |
|---|---|
| Thursday 24 October 2019 | $1 HKD = $0.1276 |
| Monday 4 November 2019 | $1 HKD = $0.1276 |
| Friday 10 January 2020 | $1 HKD = $0.1288 |
| Monday 20 January 2020 | $1 HKD = $0.1287 |
| Tuesday 21 January 2020 | $1 HKD = $0.1287 |
| Wednesday 30 September 2020 | $1 HKD = $0.129 |

# ANALYSIS

## LIEN VALIDITY

Plaintiff, Tex-Gas, asserts that the lien recorded in the Matagorda County real property records is invalid and must be expunged because Defendants failed to advance funds to Tex-Gas pursuant to the Promissory Note. Therefore, the assertions in the Deed of Trust relating to the underlying debt as set forth in the Promissory Note cannot be supported. In support of its argument, Tex-Gas offered the Promissory Note and Loan Agreement. Like most documents in this case, the Promissory Note and Loan agreement were not complete or accurate.

The Defendants argue that notwithstanding the statements in the Deed of Trust, it is nevertheless enforceable and constitutes a lien on Plaintiff's Property, as it was provided as security for other advancements made to Plaintiff. Under the Bankruptcy Code, the secured lender has the burden of proof on the issue of validity, priority and/or extent of its lien on the property.[22]

In Texas, "lien" is defined as a "charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement..."[23] Similarly, the Bankruptcy Code defines a "security interest" as a "lien created by

---

[22] *In re AFGO Developent Company, Inc.*, 625 B.R. 324 (Bankr. S.D. Tex. 2020) citing *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. ND. Tex. 2003).
[23] Tex Bus. & Com. Code Ann § 24.002(8) (Vernon 2002).

an agreement."[24] There must be an underlying debt securing a lien for the lien to encumber collateral.[25] It is undisputed that Defendants loaned money to Gate Corp., the holding company for the Plaintiff, prior to the execution of the Deed of Trust. The evidence at trial was that the Plaintiff thought the Deed of Trust was for future loans, while the Defendants believed that the agreement was for existing loans. There was no "meeting of the minds."[26]

However, a creditor may still hold an equitable lien on real property, even in the absence of a written mortgage or deed of trust.[27] Equitable liens arise when parties to a transaction "intend [for] certain property to secure the payment of a debt."[28] The existence of an equitable lien depends on whether the parties expressly or implicitly agreed that a debt would be secured by specific property, and the court can look to the circumstances surrounding the parties' transaction to determine whether such an agreement was formed.[29] Here, the loan agreements were not with the Plaintiff, but with Net Effect. Each Defendant had similar loan agreements which listed various security for the loan,[30] but not the specific Property as set forth in the Deed of Trust that was later prepared. Moreover, the Defendants testified that they did not have enough security for the loans with Net Effect, and that is why they requested the Deed of Trust from Heffner. Since all the negotiations on each end were made with Heffner, and he used his entities, Fortune Insight and Net Effect, in the written documents, the Defendants cannot establish that they had an agreement with the Plaintiff for a security interest in the Plaintiff's Property. Therefore, the Defendants failed

---

[24] 11 U.S.C. 101(51).
[25] *Satsky v. United States*, 993 F.Supp. 1027, 1029 (S.D. Tex. 1989) *citing United States v. Phillips*, 267 F.2d 374, 377 (5th Cir. 1959).
[26] Actual assent by both parties to the formation of a contract including agreement on the same terms, conditions, and subject matter.
[27] *Martin v. Ford*, 853 S.W. 2d 680, 683 (Tex. App. - Texarkana 1993, writ denied).
[28] *In re AFGO Development Company, Inc., supra* at 337, citing *Bray v. Curtis*, 544 S.W.2d 816, 819 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.)
[29] *Id.*, *citing Chormon v. McCormick,* 172 S.W.3d 22, 24 (Tex. App. - Amarillo, 2005), no pet.
[30] ECF Nos. 101-5 and 101-6.

to meet their burden of establishing that they held a lien. As a result, the Deed of Trust at issue in this case is hereby declared expunged and released, and Yuk and Bun do not have a lien or secured interest in the Plaintiff's Property.

**BREACH OF CONTRACT**

The Court finds no breach of contract between Tex-Gas, Bun and Yuk as plead by the Plaintiff. Here the record is clear that there was no meeting of the minds between the Plaintiff and Defendants.[31] Any representations made in order to induce Tex-Gas's signing of a Deed of Trust were made by Heffner. These representations, contained within the loan documents, were not by Bun and Yuk and are not attributable to them. Heffner was under pressure as his forged documents were being questioned by Adrian, Bun and Yuk. Heffner was lying to both sides of the same transaction. There was no evidence of direct communication between the Plaintiff and the Defendants, and as a result there was no meeting of the minds.

**STATUTE OF FRAUDS**

The Plaintiff attempts to make legal arguments that Tex-Gas cannot be liable for any amount Defendants loaned due to the Statute of Frauds. Such argument is based on faulty facts, which the Court has rejected. Tex-Gas was an indirect party to the loans from Bun and Yuk, it did have knowledge via Fimrite and Heffner, of the loans. It then received a benefit, in part, from the loans of Bun and Yuk. The uncontroverted evidence is that Gate Corp. received funds totaling $5,225,000.00 (HKD) or $668,300.00 (USD) from Heffner or Net Effect. Heffner was a director of Gate Corp., he personally guaranteed Gate Corp.'s debt, he had a close, working, and personal relationship with Fimrite, the other director of Gate Corp. who is also the personal representative

---

[31] "[A] binding contract requires '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.' " *Coffel v. Stryker Corp.,* 284 F.3d 625, 640 n. 17 (5th Cir.2002)

of the Debtor. Fimrite knew that without a bank account, funds for Tex-Gas's vulcanized recycling project could have only been directed to Gate Corp. The funds received from Bun and Yuk were spent, and never repaid. Additionally, there are written notes[32] and they specifically mention Heffner, Fimrite, Gate Corp., and Tex-Gas Holdings, LLC. There is a very close affinity between these parties. Heffner and Fimrite were the agents of Tex-Gas and Gate Corp. Importantly, Fimrite had actual knowledge that the notes required Fimrite to provide an irrevocable, unconditional, unsubordinated guarantee of the borrower's obligations.

## PARTIAL DISALLOWANCE OF THE PROOFS OF CLAIM

The two secured proofs of claim filed by Bun and Yuk total $9,482,983.43 (USD).[33] The Court disallows all but $668,300 (USD) and then allows this amount as an unsecured claim. This is the amount received by the parent corporation of the debtor, Gate Corp. There is a factual and legal nexus between Heffner and Gate Corp. as Heffner was a director of Gate Corp. However, neither Gate Corp. or the debtor ever received any additional funds either directly or indirectly from monies loaned by Bun and Yuk. These are the only possible funds that are traceable to the debtor's parent corporation from Bun or Yuk. Any further losses of Bun and Yuk is a direct result of their personal and business relationship with Heffner and his noted fraudulent activities, for which the Plaintiff is not liable.[34]

## ALLOCATION OF UNSECURED CLAIM

Reasonable minds may differ regarding the allocation of the allowed claim between Bun and Yuk.[35] The Court notes the lack of evidence as to how to apportion the allowed unsecured

---

[32] ECF Nos. 101-5, page 6 and 101-6, page 6.
[33] Bun, $3,793,193.37; Yuk $5,689,790.06.
[34] *Qui cum canibus concumbunt cum pulicibus surgent.*
[35] Various proportions could have been used for allocation of the allowed unsecured claim. They include using the total loaned as a proportional value $162,998,640 (HKD), 41% loaned by Bun, 59% loaned by Yuk. Additionally, Yuk was paid proportionally more than Bun 85% of loans repaid, Yuk 112% of loans repaid (ignoring interest).

claims, as here, when the Court disallows in part and allows in part the two claims filed by both Bun and Yuk. Both Plaintiff and Defendants appear to have assumed that the proofs of claim would either be allowed or disallowed in their entirety, which has not occurred. Bun and Yuk were also represented by the same counsel at trial of this matter. Counsel for Bun and Yuk did not differentiate between the validity of either of their client's claims and urged for them to be both fully allowed. The Court therefore finds both claims valid in proportion to the original totals of the now disallowed secured proofs of claim. It awards an unsecured claim of 40 percent ($267,320) to Bun and an unsecured claim of 60 percent ($400,980) to Yuk. The Court recognizes that this creates a minor windfall for Yuk versus Bun given the amounts that had been previously repaid to them both.

## ATTORNEY FEES

The Court declines to award attorney fees and finds that the American Rule requiring each party to bear its own attorney's fees in litigation is applicable in this case as there is no statutory of contractual exception for their recovery. The Federal Declaratory Judgment Act generally does not permit the recovery of legal fees.[36] However, a prevailing party may recover fees in a federal declaratory judgment action where controlling substantive law permits such recovery, but the Texas Declaratory Judgment Act is neither substantive law nor controlling here.[37] Therefore, attorney's fees are not recoverable. Here the Court finds no other restricted circumstances such as bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action which would lead to the recovery of attorney fees.[38]

---

[36] *Mercantile Nat'l Bank v. Bradford Trust Co.* 850 F.2d 215 (5th Cir. 1988).
[37] *Camacho v Tex. Workforce Comm'n,* 445 F.3d 407 (5th Cir. 2006).
[38] *In re R&K Fabricating, Inc.*, 2012 WL 2118178, *9 (Bankr. S.D. Tex. June 11, 2012) where the trustee's cause of action was to seek to establish the extent, priority and validity of the defendants' liens, stating "Therefore, based on the holding in *Camacho*, the Trustee is not entitled to his attorneys fees under the TDJA even if he sought declaratory relief in conjunction with an action to quiet title."

## HOLDING

For the reasons so stated the Court holds that the Deed of Trust (ECF No. 97-4) recorded as Document Number 3870 and recorded in the Official Records of Matagorda County, Texas on July 21, 2020, is not an enforceable lien interest against the Plaintiff's Property.  Further that this Deed of Trust is hereby declared expunged and released.   Additionally, that the Proof of Claim filed by Sham Wai Bun (POC No. 4) is disallowed as a secured claim but allowed as an unsecured claim in the amount of $267,320 (USD).  Further that the Proof of Claim filed by Lui SoYuk (POC No. 3) is disallowed as a secured claim but allowed as an unsecured claim in the amount of $400,980 (USD).  All other relief, including any award of attorney fees is denied.

A separate judgment will issue.

**SO ORDERED**.

SIGNED 02/25/2022

_____
Jeffrey Norman
United States Bankruptcy Judge